IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

BERNARD TAYLOR,

    Petitioner,            No. CIV S-07-2253 WBS EFB P

vs.

MIKE KNOWLES, Warden,

    Respondent.           FINDINGS AND RECOMMENDATIONS

_____/

       Petitioner is a state prisoner without counsel seeking a writ of habeas corpus. *See* 28 U.S.C. § 2254. This action proceeds on the October 18, 2008 petition.[1] Respondent moves to dismiss this action on the ground that it is untimely. Petitioner opposes, asserting that he can show that he is entitled either to statutory tolling or equitable tolling because of his mental illness. For the reasons explained below, the court finds that respondent's motion must be granted.

////

////

---

[1] The court deems the filing date for each of petitioner's habeas petitions to be the date reflected on the certificate of service for the respective petitions. *See Houstan v. Lack*, 487 U.S. 266, 276 (1988) (prisoner's notice of appeal deemed timely filed on the date it was delivered to prison staff for delivery to the court); *Smith v. Duncan*, 297 F.3d 809, 814 (9th Cir. 2002) (applying mailbox rule to petitions filed in state court).

**I.      Facts**

**Procedural History**

Pursuant to a plea of guilty, petitioner was convicted of possession for sale of cocaine base and possession for sale of cocaine. Resp.'s Mot. to Dism., Docs. Lodged in Supp. Thereof ("Lodg. Doc."), 1. Based on the crimes and several enhancements, petitioner was sentenced to six years in prison on February 1, 2006. *Id.* He did not appeal. As detailed below, however, he did file eight habeas petitions in California courts.

Petitioner filed three habeas petitions before he was sentenced. The first he filed on September 24, 2005, in the Sacramento County Superior Court, which was denied on November 2, 2005. Lodg. Docs. 2, 3. He filed a second habeas petition in the same court on December 21, 2005. Lodg. Doc. 4. The court denied that petition on February 6, 2006. Lodg. Doc. 5. He filed a third petition for habeas relief on December 29, 2005. Lodg. Doc. 6. That petition was denied on February 6, 2006.

Following his conviction and sentencing, petitioner filed five habeas petitions. On February 9, 2006, he filed a habeas petition in the Sacramento County Superior Court, claiming the trial court violated his due process rights by failing to hold a hearing to determine whether to strike one of the allegations that petitioner previously had been convicted of a serious felony. That strike was used by the prosecution to seek an enhanced sentence. Lodg. Doc. 10. He filed another habeas petition in the Sacramento County Superior court on February 23, 2006, claiming that the denial of a preliminary hearing violated his due process rights, and further claiming that his counsel was ineffective by failing to file a motion to suppress and by failing to request a hearing to determine whether one of the strike allegations should be dismissed. Lodg. Doc. 12. That court denied relief on April 19, 2006, on the ground that petitioner failed to demonstrate any due process violation or that his counsel rendered ineffective assistance in failing to seek a hearing on the strike allegations. Lodg. Docs. 11, 13.

////

In May 2007 petitioner appears to have lost what assistance he was receiving from another inmate. Some on petitioner's filings include references to the petitioner in the third person. It appears from those references that petitioner was not preparing all of his legal documents himself. Rather, a fellow prisoner was assisting him although the extent of the assistance is not clear from the record. That prisoner committed suicide in May of 2007. Lodg. Doc. 28, at unnumbered page 10. The interruption of assistance, however, did not prevent petitioner from filing legal papers. Even after the death of the assisting inmate, petitioner continued to file pleadings. On May 28, 2007, petitioner filed a habeas petition in the California Supreme Court claiming that the California Department of Corrections and Rehabilitation ("CDCR") was violating his plea agreement by failing to give him the time credits to which the plea agreement entitled him. Lodg. Doc. 14. On June 11, 2007, petitioner told a psychologist that he still did not have his legal documents. Lodg. Doc. 28, at unnumbered page 12. On June 26, 2007, before the California Supreme Court could resolve petitioner's habeas application, petitioner returned to the Sacramento County Superior Court with another habeas petition. Lodg. Doc. 16. Petitioner claimed that on May 24, 2007, the Clerk of the Sacramento County Superior Court unconstitutionally denied him access to transcripts of the proceedings leading to his conviction.[2] *Id.* Relief was denied on August 14, 2007, on the ground that petitioner had failed to state a *prima facie* case. Lodg. Doc. 17.

The California Supreme Court denied habeas relief on October 10, 2007. Lodg. Doc. 15. Shortly thereafter, dissatisfied with the trial court's ruling on his request for transcripts, petitioner sought reconsideration on October 20, 2007. Lodg. Doc. 18. That court considered the motion in some detail and denied it on December 11, 2007. Lodg. Docs. 19. Petitioner filed his last habeas petition on October 8, 2007, in the Sacramento County Superior Court, claiming that his conviction was illegal based on new case law holding that "the courts cannot [sic] hold

---

[2] It appears that he wanted the transcripts to support his claim that the CDCR was violating the plea agreement. Lodg. Doc. 16.

me to a [sic] enhancement's [sic] in a guilty plea." Lodg. Doc. 20, at 3. The petition was denied on November 8, 2007, on the ground that petitioner failed to show he was entitled to any relief. Lodg. Doc. 21.

Petitioner filed his federal petition on October 18, 2007.

**II.      Petitioner's Mental Health Status**

The record contains a great deal of evidence about petitioner's mental illness. Petitioner submits medical records showing that he suffers from schizoaffective disorder,[3] which presumably causes him to hear the two distinct voices he identifies as Steve and John. Pet'r Opp'n, Exh. A ("Opp'n, Exh. A"), at unnumbered pages 2-6. He has suffered from mental disorders of some sort since childhood. He reported to a prison psychiatrist that he has heard the voices of "Steve" and "John" since elementary school. *Id.* at unnumbered page 2. Petitioner consistently reported has to prison mental health professionals that he likes his voices, they comfort him, and he does not want medication to eliminate them completely. On the other hand, when petitioner was under stress, the voices added to that stress. Lodg. Doc. 25, 26.

On April 10, 2006, prison mental health staff diagnosed petitioner as suffering from schizophrenia with paranoia and depression. Lodg. Doc. 23, unnumbered page 1. On June 12, 2006, petitioner reported that the medications were not working properly. *Id.* at 4. He was exhausted and his voices were "messing with [him]." *Id.* As of July 5, 2006, petitioner was at the CCCMS[4] level of care, but threatened to stop taking his medication in order to have his classification score lowered so that he would qualify for EOP[5]. Lodg. Doc. 24, at unnumbered

---

[3] This is petitioner's most recent diagnosis. Since his confinement in prison, he has been diagnosed with other serious disorders as explained below.

[4] A document that petitioner submitted shows that "CCCMS" stands for "Clinical Case Management." Neither party explains what kind of care this involves. Opp'n, Exh. A, at unnumbered page 6.

[5] Again, petitioner's documents show that "EOP" stands for "Enhanced Outpatient Program," but the parties do not explain the care involved in this program. Opp'n, Exh. A, at unnumbered page 6.

4

page 2.

Petitioner believed that his "hot meds," which the court construes to be the psychotropic medications to treat his mental illness, disqualified him for the EOP level of care. *Id.* He believed that if he could lower his classification points to the EOP level, he would be transferred to California State Prison - Solano, which was located closer to his family. *Id.* By the time petitioner met with a psychiatrist on July 25, 2006, he had been without medication for about three weeks. *Id.* at 13. He explained to the psychiatrist the reason for not taking his medication. *Id.* At the psychiatrist's urging, petitioner began taking his medications again while the psychiatrist looked into the possibility of a transfer. *Id.* Even though petitioner began to take the medications again, prison officials changed his designation to the EOP level of care. *Id.* at 14. By August 7, 2006, petitioner was taking his medication daily as directed, but was anxious, paranoid and tearful. Lodg. Doc. 25, at unnumbered page 2. Throughout August and September, petitioner continued to take his medications and to report that his voices were a comfort to him. *Id.* at 3-4. At some point, petitioner was transferred to the California Medical Facility ("CMF"), where he was diagnosed with schizophrenia, undifferentiated type. Lodg. Doc. 25, at unnumbered page 15. Throughout September and October of 2006, petitioner was depressed, continued to hear voices and suffered from anxiety. *Id.* at 15-39. It is not clear when mental health staff at CMF decided that petitioner's symptoms justified a diagnosis of schizoaffective disorder, but that is the "controlling diagnosis" noted on records dated December 6, 2007. Opp'n, Exh. A, at 2.

### III. Statute of Limitations

A one-year limitation period for seeking federal habeas relief begins to run from the latest of the date the judgment became final on direct review, the date on which a state-created impediment to filing is removed, the date the United States Supreme Court makes a new rule retroactively applicable to cases on collateral review or the date on which the factual predicate of a claim could have been discovered through the exercise of due diligence. 28 U.S.C.

§ 2244(d)(1). In California, conviction pursuant to a plea of guilty becomes final after the time for filing an appeal has expired, i.e. 60 days. California Rules of Court, rule 8.308. The period "is not tolled from the time a final decision is issued on direct state appeal [to] the time the first state collateral challenge is filed." *Nino v. Galaza*, 183 F.3d 1003, 1006 (9th Cir. 1999). The period is tolled once a petitioner properly files a state post conviction application, and remains tolled for the entire time that application is "pending." 28 U.S.C. § 2244(d)(2). In California, a properly filed post conviction application is "pending" during the intervals between a lower court decision and filing a new petition in a higher court. *Carey v. Saffold*, 536 U.S. 214, 223 (2002). Petitioner has the burden of demonstrating that he is entitled to statutory tolling. *Smith v. Duncan*, 297 F.3d 809, 814 (9th Cir. 2002).

Under Ninth Circuit precedent, equitable tolling is available to habeas petitioners who file their federal petitions beyond the one-year limitations period. *Calderon v. United States District Court (Kelly)*, 163 F.3d 530, 541 (9th Cir. 1998) (en banc). The United States Supreme Court has yet to weigh in on this question, but has found that assuming such tolling is available, the petitioner has the burden of demonstrating that he diligently has been pursuing his rights and that some extraordinary circumstance stood in his way. *Pace v. Diguglielmo*, 544 U.S. 408, 418 (2005); *see also Miranda v. Castro*, 292 F.3d 1063, 1065 (9th Cir. 2002) (petitioner has burden of demonstrating facts that entitle him to equitable tolling). In this circuit, a district court may grant equitable tolling, "When external forces, rather than a petitioner's lack of diligence, account for the failure to file a timely claim . . . ." *Miles v. Prunty*, 187 F.3d 1104, 1107 (9th Cir. 1999). These circumstances must actually cause the untimeliness. *Spitsyn v. Moore*, 345 F.3d 796, 799 (9th Cir. 2003).

**IV.     Analysis**

The first step in deciding whether a habeas petition is timely is to determine when the limitations period began to run. Here, petitioner challenges a conviction which he did not appeal. As noted above, petitioner's conviction became final when the time for filing an appeal

6

expired, i.e., within 60 days after entry of judgment. Judgment was entered in petitioner's case on February 1, 2006. Therefore, his conviction was final on April 2, 2006, and the limitation period began to run on April 3, 2006. *Patterson v. Stewart*, 251 F.3d 243, 1246 (9th Cir. 2001). Absent tolling, then, petitioner had to file his federal petition no later than April 3, 2007, and the October 18, 2007, petition is 197 days, or just over six months, late.

**A. Statutory Tolling**

Next, the court must determine whether petitioner is entitled to statutory tolling based on "properly filed" petitions that were "pending" in the California courts. As respondent notes, the first three petitions in the Sacramento County Superior Court have no effect on the timeliness of this action because they were filed before petitioner's conviction was final. Respondent concedes that the fourth petition, which also was filed in the Sacramento County Superior Court, entitled petitioner to statutory tolling for part of the time that it was actually under consideration by that court. That petition was filed on February 16, 2006, before the limitations period began to run on April 3, 2006. It was denied on April 19, 2006, 17 days after the limitations period began to run. Given these 17 days of tolling, the federal petition is 180 days, or just under six months late.[6] The fifth state habeas petition, filed February 23, 2006, and denied April 19, 2006,

---

[6] In the context of a challenge to a decision of the Board of Prison Terms finding a prisoner not suitable for parole, one California appellate court has found that as a matter of law an unrepresented prisoner's unjustified 10-month delay in filing a habeas petition in the appellate court after the Superior Court's denial of a similar petition is not unreasonable. *In re Burdan*, 169 Cal.App.4th 18, 31 (Cal. App. 2008). In that case, the court noted that the "reasonableness" standard is rooted in California's capital habeas jurisprudence. *Id.* at 18. In that context, prompt pursuit of habeas relief is designed to "'vindicate society's interest in the finality of its criminal judgments, as well as the public's interest in the orderly and reasonably prompt implementation of its laws.'" *Id.* (quoting *In re Sanders*, 87 Cal.Rptr.2d 899, 903 (Cal. 1999)). Other interests served by requiring prisoners to file habeas petitions within relatively short periods of time, which nowhere are specified, are to ensure that evidence is not lost by the passage of time and to allow victims and their families and friends to achieve psychological closure before too long after a conviction is obtained. *Id.* In *Burdan*, the appellate court found that these considerations do not apply where a prisoner challenges a parole suitability determination. *Id.* It is clear that for policy reasons the court in *Burdan* limited its holding to parole challenges. The instant case involves a prisoner challenging a judgment of conviction. Therefore, this court declines to extend the holding of *Burdan* to this non-parole case. Furthermore, as explained below, even if this court were to find that under California law petitioner's unjustified six-month delay was

7

has no effect on the limitations period because it was pending simultaneously with the fourth state habeas petition while the limitations period was running.

Respondent contends that the 403-day delay between the April 19, 2006, denial in the superior court and the May 28, 2007, filing of a new petition is the California Supreme Court is fatal to this action because no petition was "pending" during this time. As noted, the petition here is 197 days late. Therefore, petitioner must justify 197 days' delay beginning between April 19, 2006, the date the trial court denied relief and April 3, 2007, the day the limitations period ended. Any justification for the delay which arose *after* the limitations period ended could not toll the federal limitations period. *See Fergusun v. Palmateer*, 321 F.3d 820, 823 (9th Cir. 2003) (section 2244(d) does not permit re-initiation of the limitation period when it expires before a timely state petition for post-conviction relief was filed). The questions before the court, therefore, are whether petitioner can demonstrate that a "properly filed" state post-conviction motion was "pending" for a minimum of 197 days before the date he should have filed his federal petition.

As explained above, the federal limitations period is tolled for the time during which a "properly filed" state post conviction application is "pending," which in California can include the intervals between the denial of relief in one court and the filing of a new petition in a higher court. *See Saffold v. Carey*, 536 U.S. at 223. It is clear under federal law that a state post conviction application that is untimely under state law is not "properly filed." *Pace v. DiGugliemo*, 544 U.S. 408, 414 (2005); *see also Carey v. Saffold*, 536 U.S. 214, 226 (2002) (remanding to Ninth Circuit to determine whether petition filed in the California Supreme Court within a "reasonable time," thereby making it timely under California law). However, California has no clear rule governing the time for filing post-conviction motions. Instead, "a state prisoner may seek review of an adverse lower court decision by filing an original petition (rather than a

---

reasonable, as a matter of *federal* law, a six-month unjustified delay does not satisfy the definition of "pending" as explained in *Carey v. Saffold*. *Evans v. Chavis*, 546 U.S. at 201.

8

notice of appeal) in the higher court, and that petition is considered timely if filed within a 'reasonable time.'" *Saffold*, 536 U.S. at 221; *In re Harris*, 855 P.2d 391, 398 n.7 (Cal. 1993) (habeas petition "must be filed within a reasonable time after the petitioner or counsel knew, or with due diligence should have known, the facts underlying the claim as well as the legal basis of the claim."). If a California court clearly were to rule that a delay in filing is unreasonable, "that would be the end of the matter, regardless of whether it also addressed the merits of the claim, or whether its untimeliness ruling was 'entangled' with the merits." *Saffold*, 536 U.S. at 226. In recognition of the lack of clarity in many of the California courts' rulings in habeas cases, however, the United States Supreme Court has instructed the lower federal courts as follows:

> In the absence of (1) clear direction or explanation from the California Supreme Court about the meaning of the term "reasonable time" in the present context, or (2) clear indication that a particular request for appellate review was timely or untimely, the [lower federal courts] must [themselves] examine the delay in each case and determine what the state courts would have held in respect to timeliness. That is to say, without using a merits determination as an "absolute bellwether" (as to timeliness), the federal court must decide whether the filing of the request for state-court appellate review (in state collateral review proceedings) was made within what California would consider a "reasonable time."

*Chavis*, 546 U.S. at 198. The "bellwether" to which the court refers are the words "on the merits," when a denial of habeas relief in a California Court is "on the merits and for lack of diligence." *Id.* at 194; *Saffold*, 536 U.S. at 225. A court might decide to "address the merits of a claim that it believes was presented in an untimely way: for instance, where the merits present no difficult issue; where the court wants to give a reviewing court alternative grounds for decision; or where the court wishes to show a prisoner (who may not have a lawyer) that it was not merely a procedural technicality that precluded him from obtaining relief." *Saffold*, 536 U.S. at 225-26. Grappling with the ambiguity in California's post-conviction system prompted the following explanation for the holding that an unexplained delay of six months will not toll the limitations period under § 2244(d)(2).

> We have found no authority suggesting, nor found any convincing reason to believe, that California would consider an unjustified or unexplained 6-month filing delay "reasonable." Nor do we see how an unexplained delay of this

9

magnitude could fall within the scope of the federal statutory word "pending" as interpreted in *Saffold*.

*Chavis*, 546 U.S. at 201.

Here, the California Supreme Court made no finding with respect to the timeliness of petitioner's habeas action. Petitioner asserts that his mental illness justifies the delay. There is no question that petitioner suffers from serious symptoms, such as auditory hallucinations, severe depression and anxiety. It is possible that he relied on a fellow prisoner to help him with his legal work because of his symptoms, his symptoms made it difficult to work with a fellow-prisoner, and in these circumstances justify the delay up to the (unspecified) time when the fellow prisoner committed suicide. But there is no explanation of how plaintiff's symptoms relate to the delay in this action. Furthermore, it is not clear that the fellow-prisoner was assisting petitioner to challenge his conviction. Therefore, the court finds that the interval of over six months between the denial of habeas relief in the trial court and filing a petition in the California Supreme Court is unjustified. As a matter of federal law the court cannot find that it was "pending" for purposes of § 2244(d)(2), and petitioner is not entitled to statutory tolling. Therefore, unless petitioner demonstrates that he is entitled to equitable tolling, respondent's motion must be granted.

**B. Equitable Tolling**

The parties dispute whether petitioner is entitled to equitable tolling. A court may grant equitable tolling where extraordinary circumstances beyond a petitioner's control actually cause the petitioner not to be able to timely file a habeas application. *Miles v. Prunty*, 187 F.3d at 1107; *Spitsyn v. Moore*, 345 F.3d at 799. A petitioner's mental illness or incompetence can constitute an extraordinary circumstance. *Laws v. Lamarque*, 351 F.3d 919, 923 (9th Cir. 2003) (remanding for development of the record concerning petitioner's competence and mental illness to determine whether it prevented him from complying with the one-year limitations period)*; see also Lawrence v. Florida*, 549 U.S. 327, 336 (2007) (assuming law supports mental incapacity as

a ground for equitable tolling, unsubstantiated allegation thereof is insufficient to excuse delay in filing). Without repeating the facts outlined above, the court finds that petitioner's argument in favor of equitable tolling must fail. To be sure, petitioner suffers a serious mental illness. While he asserts that he was depressed and had difficulty concentrating because of the voices he hears, it is not clear whether he suffered prolonged inability to concentrate or various episodes. Without any allegation or evidence of how petitioner's symptoms actually caused him not to be able to file despite his diligence, the court cannot find that he is entitled to equitable tolling. Countering his argument for tolling is the fact that petitioner was able to continue filing pleadings. It is simply not possible to tell from this record that petitioner should be granted tolling for any discrete period of time. Furthermore, he does not allege with any particularity how his condition actually interfered with his ability timely to file. There is no evidence about what he did in an attempt to be diligent in protecting his rights. There is evidence that in May 2007, the fellow prisoner who was assisting him with his legal work committed suicide and that as of June 11, 2007, petitioner still had not retrieved the legal materials he had relinquished to that prisoner. However, as noted above the federal petition had to be filed no later than April 3, 2007, prior to the date of that suicide. Therefore, the loss of petitioner's helper occurred after petitioner should have filed his federal habeas petition and it was not a factor in his missing the deadline.

**V.     Conclusion**

For the reasons stated, the court finds that the October 22, 2007, petition was filed beyond the one-year limitations period for federal habeas petitions and that petitioner is not entitled to equitable tolling. Therefore, respondent's motion to dismiss this action as untimely must be granted.

////

////

////

Accordingly, it is hereby RECOMMENDED that the April 11, 2008, motion to dismiss this action as untimely be granted and that this action be dismissed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

Dated: March 13, 2009.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE